

FILE
IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON

DATE   APR 1 2 2018

for   CHIEF JUSTICE

This opinion was filed for record

at 8:00 AM on April 12, 2018

SUSAN L. CARLSON
SUPREME COURT CLERK

IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| JAMES BEARDEN, | ) | |
| | ) | |
| Petitioner, | ) | No. 94320-6 |
| | ) | |
| v. | ) | En Banc |
| | ) | |
| DOLPHUS McGILL, et ux., | ) | |
| | ) | Filed   APR 1 2 2018 |
| Respondents. | ) | |
| | ) | |

OWENS, J. — Mandatory arbitration provides an efficient and inexpensive procedure to resolve low dollar amount disputes. Parties to mandatory arbitration may request a trial de novo after the arbitration award is issued. If the party that requests a trial de novo after mandatory arbitration "fails to improve" his or her position at the trial, then the opposing party may move for the requesting party to pay the reasonable attorney fees incurred as a result of the trial de novo. Mandatory Arbitration Rule (MAR) 7.3. In this case, we are asked to determine whether to include statutory costs when comparing the trial judgment with the arbitration award. We reaffirm that the determination of whether a requesting party's position was

improved should follow the reasoning of an ordinary person. Accordingly, we hold

that statutory costs should be included. We therefore reverse the Court of Appeals.

## FACTS

Plaintiff James Bearden sued Dolphus McGill after they were involved in a car

accident. They went to mandatory arbitration, and the arbitrator awarded plaintiff

Bearden $44,000.00 in damages. Bearden moved for statutory costs under RCW

4.84.010 as the prevailing party. The arbitrator, consistent with MAR 6.4(d), filed an

amended award granting the fee request. The amended award granted $1,187.00 in

costs to the plaintiff, amounting to a total award of $45,187.00. Defendant McGill

requested a trial de novo. At trial, the jury awarded Bearden $42,500.00 in damages

and $3,296.39 in RCW 4.84.010 costs for a total award of $45,796.39. Bearden

moved for attorney fees under MAR 7.3, arguing that McGill had not improved his

position at trial because the trial award of $45,796.39 exceeded the arbitral award of

$45,187.00. The trial judge agreed and awarded Bearden $71,800.00 in attorney fees

and costs incurred as a result of the trial.

McGill appealed, arguing that the trial court erred by including trial costs in the

MAR 7.3 comparison. The Court of Appeals vacated the award of attorney fees and

costs to Bearden, holding that the proper comparison was between the common

elements of the awards in both proceedings, including only "those costs and fees

litigated before both the arbitrator and trial court." *Bearden v. McGill*, 193 Wn. App.

2

235, 253, 372 P.3d 138 (2016) (*Bearden* I). This court granted review and remanded

the case to the Court of Appeals for reconsideration in light of *Nelson v. Erickson*, 186

Wn.2d 385, 377 P.3d 196 (2016), a recent decision from this court. *Bearden v.*

*McGill*, 186 Wn. 2d 1009, 380 P.3d 489 (2016).

On remand, the Court of Appeals again vacated the award of fees and costs,

holding that the MAR 7.3 comparison should only include the damages portions of

each award, exclusive of any statutory costs awarded in either proceeding. *Bearden v.*

*McGill*, 197 Wn. App. 852, 861, 391 P.3d 577 (2017). McGill appealed, and this

court granted review. *Bearden v. McGill*, 188 Wn.2d 1015, 396 P.3d 343 (2017).

## ISSUE

Are statutory costs to be included in the MAR 7.3 comparison?

## ANALYSIS

After an arbitrator files a decision in mandatory arbitration, either party may

request a trial de novo. RCW 7.06.050(1). If a party who requested a trial de novo

"fails to improve the party's position on the trial de novo," then the opposing party is

entitled to an award of its costs and reasonable attorney fees incurred as a result of the

request for a trial de novo. MAR 7.3; RCW 7.06.060.

The purpose of the fee-shifting provision in MAR 7.3 is "to encourage

settlement and discourage meritless appeals." *Niccum v. Enquist*, 175 Wn.2d 441,

451, 286 P.3d 966 (2012); *Williams v. Tilaye*, 174 Wn.2d 57, 63, 272 P.3d 235 (2012).

3

Without this fee-shifting provision to deter parties from appealing, arbitration could "become just another procedural step before trial . . . . [It] would be nothing more than a dress rehearsal for the real trial, with each side getting a good look at the other's case." *Williams*, 174 Wn.2d at 63. MAR 7.3 deters frivolous appeals by penalizing pyrrhic victors: a party who congests a trial court's docket by requesting a trial de novo in order to lose money shall succeed in that endeavor, and parties who wish to appeal close calls do so at their own peril.

MAR 7.3 focuses solely on the position of the requesting party and is blind to the position of the nonrequesting party. In a scenario where a defendant who lost at arbitration requests a trial de novo and spends $3,000 in additional costs in pursuit of a $500 reduction in judgment, both sides will be worse off than before. Such a no-win situation is precisely why the fee-shifting rule exists. *Niccum*, 175 Wn.2d at 451. Such a rule is essential because the expenses to be considered are not only those of the nonrequesting party, who without fee-shifting would be forced to incur relatively large attorney fees to relitigate a low-amount claim, but also the public fisc, which incurs a cost as well, as do the jurors if a jury trial is requested. To deter this mutually dissatisfactory scenario, MAR 7.3 penalizes a party who requests a trial de novo and

does not improve their position, without regard to the position of the nonrequesting party.[1]

The court is asked to interpret the meaning of "improve the party's position," as used in MAR 7.3. Because "[t]he surest indication of legislative intent is the language enacted by the legislature," an attempt to interpret the phrase "improve the party's position" must begin by attempting to ascertain the plain meaning of that provision. *State v. Ervin*, 169 Wn.2d 815, 820, 239 P.2d 354 (2010). This inquiry looks "to the text of the statutory provision in question, as well as 'the context of the statute in which that provision is found, related provisions, and the statutory scheme as a whole.'" *Id.* (quoting *State v. Jacobs*, 154 Wn.2d 596, 600, 115 P.3d 281 (2005)). If the plain language is ambiguous, this court "may look to the legislative history of the statute and the circumstances surrounding its enactment to determine legislative intent." *Rest. Dev., Inc. v. Cananwill, Inc.*, 150 Wn.2d 674, 682, 80 P.3d 598 (2003).

Turning first to the language itself, no reference is made in the text of MAR 7.3 or RCW 7.06.060 to any element of an award, either damages or costs. Legislative bodies are aware of how to disaggregate the cost and damages portions of an eventual award for the purposes of a fee-shifting provision, and elected not do so here. *See, e.g.*, RCW 4.84.250, .260, .270; RCW 64.55.160(4) (all expressly using the phrase

---

[1] Thus, a party may improve his or her position and not be the prevailing party for the purposes of RCW 4.84.010. Likewise, a party may be considered a prevailing party at trial for the purposes of RCW 4.84.010 and still fail to improve his or her position. These statutes are wholly distinct.

"exclusive of costs" when the legislature intends for analysis to disregard costs). In light of this legislative silence, the absence of an express provision excluding costs from the MAR 7.3 analysis supports the inclusion of costs in that comparison. *See State v. LG Elecs., Inc.*, 186 Wn.2d 1, 10, 375 P.3d 636 (2016).

The statutory history of related provisions also supports the inclusion of costs in the MAR 7.3 analysis. MAR 7.1, which provides the deadline for requesting a trial de novo, was amended in 2011. Whereas MAR 7.1 previously provided that an aggrieved party could request a trial de novo within 20 days after the award, MAR 7.1 was amended so that the request for trial de novo could be made within 20 days of the later of "(1) the award or (2) a decision on a timely request for costs or attorney fees." MAR 7.1(a). The amendment essentially extended the timeline for requesting a trial de novo, giving the parties an opportunity to consider the arbitrator's decision on costs and attorney fees. This change signals an intent to allow parties to consider costs and attorney fees before deciding whether to request a trial de novo.

Imagine a party that requests a trial de novo, based in part on what it correctly assessed to be an incorrect denial of statutory costs and fees. At trial, the party is properly awarded the fees it was incorrectly denied at arbitration. If costs are not included in the MAR 7.3 comparison and that party received the same compensatory damages at trial and at arbitration, then that party would be found not to have "improved his or her position" and would be liable for the other party's fees, despite

6

prevailing with regard to an issue of such importance that the MARs were amended to allow parties time to consider it. Such an outcome would be contrary to the balance struck by fee-shifting, deterring frivolous appeals while preserving warranted challenges.

The legislative history of RCW 7.06.060 further supports including costs when considering whether the party's position has improved. The final senate bill states that "[t]he determination of whether or not the appealing party's position has been improved is based on the amount awarded in arbitration compared to the amount awarded at the trial de novo." FINAL B. REP. ON S.B. 5373, at 1, 57th Leg., Reg. Sess. (Wash. 2002). In 2011, the legislature made clear that statutory costs, such as RCW 4.84.010 costs, may be properly granted in mandatory arbitration. *See* MAR 3.2, 6.4, 7.1. The procedure by which a party may request statutory costs and attorney fees is detailed in MAR 6.4. This provision was completely amended in 2011, along with MAR 3.2, to resolve any ambiguity as to the arbitrator's authority to award statutory costs and fees. 4A KARL B. TEGLAND, WASHINGTON PRACTICE: RULES PRACTICE drafter's cmts. at 6-7, 15 (Supp. 2017). Because the amount awarded at arbitration includes costs granted via MAR 6.4, the legislative history supports including arbitration costs when considering whether the party's position improved. Thus, based on the plain language of the rule and the legislative history of related

provisions, "improved the party's position" should be interpreted to include statutory costs.

This interpretation is also consistent with how an ordinary person would compare the arbitral award and the superior court judgment. MAR 7.3 "was meant to be understood by ordinary people who, if asked whether their position had been improved following a trial de novo, would certainly answer 'no' in the face of a superior court judgment against them for more than the arbitrator awarded." *Cormar, Ltd. v. Sauro*, 60 Wn. App. 622, 623, 806 P.2d 253 (1991); *see also Niccum*, 175 Wn.2d at 452; *Nelson*, 186 Wn.2d 385. MAR 7.3 is intended to shape the conduct of the parties, and the rule should be interpreted as an ordinary party to an action would understand it. In the present case, the superior court judgment exceeds the arbitral award, and an ordinary person would therefore conclude that the defendant did not improve his position.

In *Bearden*, the Court of Appeals found that while some costs should be included in the MAR 7.3 comparison, any costs incurred solely due to the trial de novo should be excluded. 193 Wn. App. at 144. Rather than task trial courts with disaggregating common costs from solely trial costs, and in keeping with the "ordinary person" standard, we hold that generally the comparison to be made is between the total amended arbitration award, including costs, and the total trial award, including costs.

In so holding, however, we do not disturb our ruling in *Haley v. Highland.* 142 Wn.2d 135, 155, 12 P.3d 119 (2000). In *Haley*, we held that a substantive claim not raised at arbitration but brought at trial could not be used to inflate the trial award for the purposes of a MAR 7.3 analysis. *Id.* The inclusion of newly incurred statutory costs is distinguishable from the addition of new claims, newly joined or released parties, or other changes in a case's posture that have previously been found to render a straight award-to-award comparison inequitable. *See, e.g., Christie-Lambert Van & Storage Co. v. McLeod,* 39 Wn. App. 298, 304, 693 P.2d 161 (1984) (a new claim brought in the trial de novo not considered in the comparison); *Hedger v. Groeschell,* 199 Wn. App. 8, 18-20, 397 P.3d 154 (2017) (sanctions based on conduct at trial excluded from the comparison); *Sultani v. Leuthy,* 86 Wn. App. 753, 759, 943 P.2d 1122 (1997) (apportionment of judgment at trial among defendants rendered comparison to joint and several arbitration award improper).

Trial costs are procedural in nature, are predictable, and can be factored into a defendant's decision of whether or not to request a trial de novo. We leave to the trial courts the task of determining in each case whether changed circumstances between the arbitration and trial render a portion of the trial award not fairly comparable with the arbitral award. Our holding is merely that generally, the inclusion of additional statutory costs incurred as a result of the trial does not render a comparison unfair.

9

## CONCLUSION

Because statutory costs are intended to be accounted for in the calculus of a party considering a trial de novo, and in keeping with an ordinary person's understanding of what it means to improve one's position, costs should be included when determining whether a party improved his or her position. Because an ordinary person would compare an arbitral award to a trial award without severing trial costs from arbitration costs, even statutory costs incurred solely as a result of the trial de novo should generally be included in the analysis. However, a substantive change between arbitration and trial, such as a change in party posture or claims brought, may render a simple award-to-award comparison unfair.

Bearden's statutory costs should be included, and the Court of Appeals is reversed.

_(signature)_ Owen, J.

WE CONCUR:

Fairhurst, C.J.

_(signature)_

_(signature)_ González, J.

_(signature)_ Yu, J.

Stephens, J.

No. 94320-6

YU, J. (concurring)—The majority opinion arrives at the right result, but its simple conclusion is lost in its meandering analysis. As succinctly summarized by the petitioner: "In deciding whether the appealing party improved its position, an ordinary person would compare the amount the party would have had to pay to satisfy the arbitration award to the amount the party would be required to pay to satisfy the trial court judgment." Pet'r Bearden's Suppl. Br. at 5 (formatting omitted). This court agrees. Therefore, the calculation must include statutory costs. No mind-boggling, convoluted explanation is required.

I concur.

No. 94320-6

WIGGINS, J. (dissenting)—To determine whether a party has improved its position at trial after seeking a trial de novo from an arbitration award, we must decide whether that party's pre- and posttrial positions include only the damages awarded for the claim at each proceeding, or if the party's compared positions also include the statutory costs awarded for expenses incurred during litigation. Because the amount of costs awarded to a party generally has nothing to do with the merits of the dispute, costs should not be considered in determining whether a party improved its position at the trial de novo; only the arbitrator's award of damages and the damages awarded at the trial de novo should be compared. I respectfully dissent.

I agree with the reasoning of the Court of Appeals in both of its opinions in this case, and I have little to add.[1] *Bearden v. McGill*, 193 Wn. App. 235, 372 P.3d 138 (2016) (*Bearden* I), *adhered to on remand*, 197 Wn. App. 852, 391 P.3d 577 (2017) (*Bearden* II). As the Court of Appeals held, whether a party improved its position at trial should be determined by "comparing comparables." *See Bearden* I, 193 Wn. App. at 239; *see also Wilkerson v. United Inv., Inc.*, 62 Wn. App. 712, 717, 815 P.2d 293 (1991); *Haley v. Highland*, 142 Wn.2d 135, 154, 12 P.3d 119 (2000). We should also adhere to a rule that is easily "'understood by ordinary people.'" *Niccum v. Enquist*,

---

[1] I disagree with the Court of Appeals in one respect: because I believe that the award of costs does not reflect the merits of the case, I would exclude all costs from the comparison of an arbitration damages award to a trial de novo damages award.

175 Wn.2d 441, 452, 286 P.3d 966 (2012) (whether a party improves his or her position at trial is meant to be understood by ordinary people (quoting *Cormar, Ltd. v. Sauro*, 60 Wn. App. 622, 623, 806 P.2d 253 (1991)). Here, the Court of Appeals recognized that in our leading cases interpreting this rule, *Niccum v. Enquist*, *id.*, and *Nelson v. Erickson*, 186 Wn.2d 385, 377 P.3d 196 (2016), this court calculated a party's posttrial position by looking only to the damages award in the trial de novo, exclusive of costs, and correctly concluded that the party's pretrial position must be established the same way: by looking at the initial arbitration award, exclusive of costs. *Bearden* II, 197 Wn. App. at 854 (citing *Nelson*, 186 Wn.2d 385); *Niccum*, 175 Wn.2d 441.

The purpose of mandatory arbitration is to discourage "meritless appeals from arbitration as well as [to] preserv[e] superior court resources for trial of larger claims." *Fernandes v. Mockridge*, 75 Wn. App. 207, 212, 877 P.2d 719 (1994). At the same time, the "rules are not intended to divert from superior court, or burden with increased risk, those claimants whose legitimate damage claims have a reasonable possibility of exceeding the threshold amount." *Id.* In short, the rules are intended to discourage meritless requests for trial de novo, while not unduly burdening legitimate damage claims.

To balance the competing goals of discouraging meritless appeals and accommodating legitimate damage claims, we should adopt a rule that is based on the merits of cases and the legitimacy of the damage claims. The best bench marks for evaluating whether a party brought a meritorious request for trial de novo are the

2

damages awarded at the arbitration compared to the damages awarded at the trial de novo. A higher award at the trial de novo obviously means that the plaintiff improved its position and a lower award that the defendant improved its position. This easily understood and applied rule automatically balances the goals of discouraging unnecessary trials de novo while encouraging legitimate claims.

In contrast, if we include costs in the calculation, we introduce an element that has nothing to do with the merits or legitimacy of the claims. This case provides a classic example. Plaintiff James Bearden was awarded $44,000 in damages by the arbitrator. At the trial de novo, plaintiff was awarded less, $42,500. If we do not include costs, it is clear that defendants Dolphus and Kelli Knox McGill improved their position because their liability was reduced by $1,500. But when costs are included ($1,187 at arbitration and $3,296 at trial), plaintiff Bearden's total award at arbitration becomes $45,187 and at trial de novo $45,796. Defendants' position after the trial de novo changed from a net reduction of liability of $1,500 on the merits to a net increase of liability of $609. This modest $609 difference triggered an award of actual attorney fees against the McGills in the amount of $71,800.

The costs that caused this significant swing in outcome consist of plaintiff's filing fees, service of process fees, witness fees, deposition costs, medical records, police report, expert report, and a statutory attorney fee of $200. None of these costs reflects the merits of the defendants' decision to seek a trial de novo.

Comparing an arbitrator's award of damages to the damages award in a trial de novo employs a meaningful measure of one's position pre- and posttrial: the merits

3

of the claim. Not only does this approach "promote[ ] simplicity," as Judge Leach remarked, *Bearden* II, 197 Wn. App. at 859, it parallels the legislative purpose of the fee-shifting rule: to discourage meritless appeals. RCW 7.06.060; MAR 7.3.

Additionally, severing the merits of a trial de novo from a party's pre- and post-trial positions by allowing costs to be a thumb on the improvement scale is not only contrary to an ordinary person's understanding,[2] it is inequitable: a defendant's request for a trial de novo can be *meritorious* (i.e., the damage award is more favorable than the arbitrator's award) and still result in the defendant's having not improved her position, while a plaintiff's request for a trial de novo can be *fruitless* (i.e., the damage award is less favorable than the arbitrator's award) and still result in the plaintiff's having improved her position.

## Conclusion

Comparing an arbitrator's award of damages to a trial de novo damage award to determine whether a party improved its position at trial emphasizes the merits of a case by employing a meaningful measure of one's position, while still discouraging meritless requests for trials de novo. Including costs in this equation departs from our precedent, promotes uncertainty, and turns a meaningful measure into an arbitrary and inequitable determination. Therefore, I would affirm the Court of Appeals.

---

[2] Ordinary defendants such as the McGills would understand that their position had improved if the jury verdict was lower than the arbitration award.

4

I respectfully dissent.

_____
Wiggins, J.

Madsen, J.